Perry L. SCOTT, Sr., Michelle M. Scott, Phillip H. Scott, Jr., et al., Plaintiffs–Appellants,

v.

Rodney L. EDINBURG and Village of Glenwood, a municipal corporation, Defendants–Appellees.

No. 02–4085.

United States Court of Appeals, Seventh Circuit.

Argued May 14, 2003.

Decided Oct. 9, 2003.

Thomas C. Marszewski (argued), Montgomery & Associates, Chicago, IL, for Plaintiff-Appellant.

Steven M. Puiszis (argued), Hinshaw & Culbertson, Chicago, IL, for Defendant-Appellee.

Before POSNER, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Perry L. Scott, Sr. and other individuals (collectively, "the plaintiffs") brought this action on behalf of the deceased Phillip Scott ("Mr. Scott") in Illinois state court.

They claimed that Officer Rodney Edinburg ("Officer Edinburg") impermissibly had used deadly force in attempting to arrest Mr. Scott. The defendants, Officer Edinburg and his employer, the Village of Glenwood, removed the case to federal court. The plaintiffs' third amended complaint alleged a violation of 42 U.S.C. § 1983 based on an allegation of an illegal seizure in violation of the Fourth Amendment. The complaint also included an Illinois state survival action and wrongful death claim.[1] Having determined that Officer Edinburg's use of deadly force was objectively reasonable, the district court granted the defendants' motion for summary judgment. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

Rodney Edinburg was a police officer employed by the Village of Glenwood. At 11:10 p.m. on May 17, 1999, Officer Edinburg was off-duty and driving his personal car, a red convertible Ford Mustang. He parked the vehicle, with the top down, in a Marathon gas station on the South Side of Chicago, left the keys in the ignition, exited the car in search of something to eat, and approached J.J.'s hot dog stand adjacent to the gas station. While at the hot dog stand, Officer Edinburg learned that an individual had entered his car and was trying to steal it. The perpetrator was Phillip Scott. Officer Edinburg ran back to the car and stopped between three to

five feet from the rear bumper. Officer Edinburg testified that he could not see Mr. Scott's right hand, which was either searching for something or perhaps turning the ignition.

Officer Edinburg yelled "stop, stop," "hey," and "that's my car." R.63, Ex.3 at 22. The car's reverse lights then came on, and it backed up toward him, so that Officer Edinburg was forced to run backward to avoid being hit. Mr. Scott was looking over his shoulder at Officer Edinburg as the vehicle backed up. As he moved out of the way, Officer Edinburg yelled "stop, police" and drew his revolver. *Id.* at 23–24. Two to four seconds later, the car stopped backing up and began to drive forward. The exact instant that the first shot was fired is unclear, but the parties agree that Officer Edinburg fired the shot no earlier than the instant when the car stopped moving backward and started to move forward. Officer Edinburg testified that, after the first shot was fired, the tires skidded and the car sped off.

Officer Edinburg stated that he noticed two individuals in the direct path of the car and that people were moving, ducking and running away as Mr. Scott drove through the parking lot at a very high rate of speed. The plaintiffs, however, introduced affidavits by two bystanders, stating that no one was in the car's direct path and that no one was forced to move out of the way. It is undisputed that there were between twelve and fourteen patrons in the gas station parking lot throughout the incident. While the car was still in the parking lot, Officer Edinburg fired a second shot. The vehicle then exited the parking lot, proceeding north on State

---

1. The district court granted the defendants' motion for summary judgment, which sought summary judgment on both the § 1983 and pendent state law claims. *See* R.57 at 14. In this court, the plaintiffs have not argued either in their initial or reply brief that the grant of summary judgment on the state claims should be reversed. Consequently, we address the only issue asserted on appeal: whether summary judgment on the § 1983 claim was appropriate.

Street. Officer Edinburg followed on foot and fired at least six more shots. Shortly thereafter, Mr. Scott died, and the car crashed. It is not clear which gunshot killed Mr. Scott; but, the parties agree that the fatal shot was one of the "first few shots fired by Officer Edinburg, while he was on the gas station property." R.58, Ex.C at 2; *see* Appellant's Br. at 3–4.

## B. District Court Proceedings

Relying on the testimony that Mr. Scott tried to run Officer Edinburg down with the Mustang and the uncontradicted testimony that there were twelve to fourteen bystanders in the gas station parking lot, the district court concluded that the use of deadly force was justified under *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). *See* R.69 at 6 & 16. The plaintiffs argued that Mr. Scott did not try intentionally to run into Officer Edinburg and that Mr. Scott did not pose a danger to bystanders in the parking lot. *See id.* at 8. The district court noted that the plaintiffs did not introduce contradictory forensic evidence; rather, they attempted to challenge Officer Edinburg's story by arguing that his testimony is internally contradictory, inconsistent with prior statements, and contradicted by eyewitness testimony. *See id.* Nevertheless, the court concluded that these challenges to Officer Edinburg's testimony did not create a dispute over a material fact. *See id.* at 16.

## II

## DISCUSSION

### A. Standard of Review

■ We review the district court's grant of the motion for summary judgment de novo. *See Adams v. Wal–Mart Stores, Inc.*, 324 F.3d 935, 938 (7th Cir. 2003); *Rauen v. United States Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 895 (7th Cir.2003). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating whether a genuine issue of material fact exists, all evidence and inferences must be viewed in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). However, "the nonmoving party must set forth specific facts, more than mere conclusions and allegations, sufficient to raise a genuine issue for trial; 'the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ....' " *Balderston*, 328 F.3d at 320 (quoting *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in *Anderson* )); *see Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548.

### B. Fourth Amendment Analysis

■ The plaintiffs' § 1983 claim is based on an alleged violation of Mr. Scott's Fourth Amendment right to be free from unreasonable seizures. A police officer's use of deadly force constitutes a seizure within the meaning of the Fourth Amendment, and therefore it must be reasonable. *See Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Muhammed v. City of Chicago*, 316 F.3d 680, 683 (7th Cir.2002). In *Tennessee v. Garner*, the Supreme Court outlined the principles for evaluating whether the use of

deadly force is reasonable under the Fourth Amendment:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Garner,* 471 U.S. at 11–12, 105 S.Ct. 1694; *see Bell v. Irwin,* 321 F.3d 637, 639 (7th Cir.2003). The fact-specific nature of whether an officer used excessive force depends on the totality of the circumstances surrounding the encounter. *See Estate of Phillips v. City of Milwaukee,* 123 F.3d 586, 592 (7th Cir.1997).[2]

■■■ The issue of whether an intentional use of deadly force by a police officer is permissible under the Fourth Amendment requires an objective reasonableness inquiry. *See Graham v. Connor,* 490 U.S. 386, 399, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The officer's subjective belief or motivations are irrelevant. *See id.* at 397, 109 S.Ct. 1865 ("[E]vil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will … good intentions make an objectively unreasonable use of force constitutional."). The "particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. 1865; *see Bell,* 321 F.3d at 639; *Estate of Phillips,* 123 F.3d at 592. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397, 109 S.Ct. 1865; *see Estate of Phillips,* 123 F.3d at 592. Moreover, the reasonableness calculation "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865. Consequently, " 'when an officer believes that a suspect's actions [place] him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force.' " *Muhammed,* 316 F.3d at 683 (quoting *Sherrod v. Berry,* 856 F.2d 802, 805 (7th Cir.1988) (en banc) and omitting emphasis).

Officer Edinburg presents two rationales to justify his use of deadly force.[3] First, he contends that Mr. Scott committed a forcible felony by trying to run over him with the Mustang, a deadly weapon, which made it reasonable for him to protect himself by using deadly force. Second, Officer Edinburg argues that it was objectively reasonable to use deadly force

---

**2.** We have held that, if the suspect threatens the officer with a weapon, the risk of serious physical harm to the officer or others has been established. *See Bell v. Irwin,* 321 F.3d 637, 639 (7th Cir.2003).

**3.** The defendants argue in the alternative that Officer Edinburg is entitled to qualified immunity and that we may affirm on this ground although it was not relied on by the district court. Nevertheless, in this case, we need not consider the second prong of the *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), qualified immunity analysis because we find no constitutional violation.

to protect the other patrons in the gas station parking lot. Assuming that either of these two propositions is true, then the use of deadly force would have been permissible under *Tennessee v. Garner.*

### 1. Threat to Officer Edinburg

■ Officer Edinburg contends that Mr. Scott threatened him with a deadly weapon by trying to back over him with the Mustang. He submits that this action justified his use of deadly force to protect himself. The plaintiffs argue, however, that there is a genuine issue of material fact concerning this matter that precludes summary judgment. We agree.

It is clear that, when an individual threatens a police officer with a deadly weapon, the officer is permitted to use deadly force in self-defense if the use is consistent with the principles set forth in *Tennessee v. Garner.* *See Garner,* 471 U.S. at 11–12, 105 S.Ct. 1694; *Muhammed,* 316 F.3d at 683. Moreover, an automobile may be used as a deadly weapon. *See Smith v. Freland,* 954 F.2d 343, 347 (6th Cir.1992). However, in *Ellis v. Wynalda,* 999 F.2d 243 (7th Cir.1993), we noted that, even "[w]hen an officer faces a situation in which he could justifiably shoot, he does not retain the right to shoot at any time thereafter with impunity." *Id.* at 247. In *Ellis,* we reversed a grant of summary judgment in a police officer's favor when he shot an unarmed burglar in the back after the suspect threw a bag at the officer and fled. We concluded that the threat to the officer had ceased once the suspect had thrown the bag and fled and that the legality of the use of deadly

force ended with the expiration of the threat. *See id.* Thus, the timing of Officer Edinburg's first shot is critical. It is undisputed that every shot after the first one was fired while the car was moving away from Officer Edinburg, *see* R.65, Ex.C at 43, but the timing of the first shot is unclear.[4] Officer Edinburg's own deposition testimony is the only evidence in the record directly addressing the instant that the first shot was fired.

In their response to the defendants' Local Rule 56.1 Statement of Uncontested Facts, the plaintiffs agreed with the defendants that "at the point where the vehicle stopped moving towards Defendant Edinburg and began moving away from Edinburg, he fired his weapon at Scott." R.63 at ¶ 16; R.58 at ¶ 16. However, in his deposition testimony, Officer Edinburg initially stated that the car was in the process of backing up and stopping when he fired the first shot. *See* R.63, Ex.3 at 26 ("The brake lights came on after I backed up, yelled stop police at which time I fired a shot."). On the next page, Officer Edinburg was asked if the car had stopped when he fired the first shot, and he responded "no." *See* R.63, Ex.3 at 27. Four pages later, the following exchange occurred: "Q. At the time you fired the first shot, was the vehicle backing up, standing still or moving away from you? A. Moving away from me." R.65, Ex.C at 31. The discrepancy in Officer Edinburg's testimony is significant.

If the fatal shot was fired while Mr. Scott was driving away, then the argument that Officer Edinburg was compelled to

---

4. We note that Officer Edinburg fired approximately six additional shots after Mr. Scott had exited the gas station parking lot and was driving north on State Street. *See* R.65, Ex.C at 41. Nevertheless, the propriety of these shots is not in issue because the parties do not dispute that the gunshot that killed Mr. Scott was one of the "first few shots fired by Officer Edinburg, while he was on the gas station property." R.58, Ex.C at 2; *see* Appellant's Br. at 3–4 (agreeing that "it is believed that the first or second shot ... was ultimately responsible for [Mr. Scott's] death ...").

fire in order to protect himself would be significantly weakened. Accordingly, there is a genuine issue of material fact as to the timing of the first shot, which precludes a grant of summary judgment based on *Garner's* justification for self-defense.

### 2. Threat to Bystanders

██ Officer Edinburg also maintains that his use of deadly force did not violate the Fourth Amendment because, as Mr. Scott drove through the parking lot of the Marathon gas station, there were between twelve to fourteen patrons in the vicinity of the vehicle's path whose safety Officer Edinburg believed was at risk; these people were "forced to run and duck out of the path of the vehicle." R.58 at ¶¶ 7–18. Although we have determined that a genuine issue of material fact exists as to the timing of Officer Edinburg's firing of the first shot, Mr. Scott's attempt to run over Officer Edinburg is relevant in considering the reasonableness of Officer Edinburg's perception that the bystanders were in danger. In *Ellis*, we explained "[i]f Ellis had threatened the officer with a weapon and then run off with the weapon, a reasonable officer ... could believe that Ellis created a danger to the community." *Ellis*, 999 F.2d at 247. Officer Edinburg knew that Mr. Scott already had committed a forcible felony and had attempted to run him down in order to escape or at least had acted recklessly with respect to that possibility.[5] Moreover, Officer Edinburg knew that Mr. Scott was escaping at a high rate of speed through a parking lot with twelve to fourteen bystanders and demonstrating little concern for anyone's safety. These facts support Officer Edinburg's argument that

the use of deadly force was permissible to protect third parties in danger. *See Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988) (en banc) (" *'[W]hen an officer believes that a suspect's actions [place] him, his partner, or those in the immediate vicinity in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force.' "* (emphasis in original)); *see also Muhammed*, 316 F.3d at 683 (quoting *Sherrod*); *Ford v. Childers*, 855 F.2d 1271, 1275 (7th Cir.1988) (en banc) (finding no Fourth Amendment violation when officer fired at a suspect "because he reasonably believed that the suspect had committed a felony involving the threat of deadly force, was armed with a deadly weapon, and was likely to pose a danger of serious harm to others if not immediately apprehended"); *Freland*, 954 F.2d at 347 (affirming summary judgment even though officer was not in immediate personal danger when he fired his weapon because he could reasonably believe that the suspect posed a serious and immediate danger to the public and fellow officers).

The plaintiffs contend that the district court's grant of summary judgment was inappropriate because there exists a genuine issue of material fact regarding whether there was a threat to any bystanders. They rely on the identically worded affidavits of eyewitnesses Moses Dean, Jr. and Gregory Woolridge for the proposition that no one was actually in the direct path of Mr. Scott as he drove through the parking lot and that no bystander was forced to flee the car. The affidavits state: "While the vehicle proceeded through the Marathon gas station parking lot, at no time

---

**5.** Under Illinois law, Mr. Scott's action of trying to steal Officer Edinburg's Mustang constitutes the forcible felony of burglary. *See* 720 ILCS 5/19–1; *People v. Buckner*, 203 Ill.App.3d 525, 149 Ill.Dec. 57, 561 N.E.2d 335, 342 (1990). Additionally, Mr. Scott committed a second forcible felony by attempting to run over Officer Edinburg with the car. *See* 720 ILCS 5/2–8.

were there any people in the direct path of the vehicle's travel." R.63, Ex.5 at ¶ 7; R.63, Ex.6 at ¶ 7. They also state, "While the vehicle proceeded through the Marathon gas station parking lot, no people ran or were forced to flee from the vehicle's path to avoid being struck by the car." R.63, Ex.5 at ¶ 9; R.63, Ex.6 at ¶ 9. Finally, the plaintiffs invite us to consider statements in the affidavits from Dean and Woolridge that assert, "While the vehicle proceeded through the Marathon gas station parking lot, at no time were there any people who were in danger of being struck by the vehicle." R.63, Ex.5 at ¶ 8; R.63, Ex.6 at ¶ 8.[6]

The affidavits clearly create a disputed fact as to whether people were in the direct path of the car and whether they were forced to run and duck out of its way. Nevertheless, this conflict does not preclude summary judgment because the threatened individuals need not have been placed in the direct path of the threat. Deadly force may be exercised if the suspect's actions place the officer, "his partner, or those in the *immediate vicinity* in imminent danger of death or serious bodily injury." *Muhammed,* 316 F.3d at 683 (citing *Sherrod,* 856 F.2d at 805) (emphasis added). Moreover, as we have noted, at the time Officer Edinburg fired the fatal shots, there were between twelve and fourteen patrons in the gas station parking lot, Mr. Scott had committed a forcible felony by stealing Officer Edinburg's car, and Mr. Scott had placed Officer Edinburg in danger. The affidavits do not dispute these facts; therefore, they do not reject the basis for our conclusion that it was objectively reasonable for Officer Edinburg to perceive that the bystanders in the Marathon gas station parking lot were at risk of injury from Mr. Scott.

Additionally, the plaintiffs argue that the report of their expert, James Marsh, creates a genuine issue of material fact. The report concludes that Officer Edinburg's actions were "based on faulty perception, poor judgment, were untimely, were without verbal warning, were excessive, and were unjustified." R.63, Ex.7 at 11. However, Marsh's report was introduced into the record without any supporting affidavit verifying its authenticity and is therefore inadmissible and cannot be considered for purposes of summary judgment. *See Haywood v. Lucent Techs., Inc.,* 323 F.3d 524, 533 (7th Cir.2003) (stating that evidence relied upon to defeat a motion for summary judgment must be evidence of a type admissible at trial);

---

**6.** Officer Edinburg contends that the statements in paragraph 8 are not admissible and therefore do not preclude summary judgment. In *Reese v. Anderson,* 926 F.2d 494, 499 (5th Cir.1991), the Fifth Circuit rejected similar statements in an affidavit in support of a motion opposing summary judgment. The affidavit considered the shooting of a suspect who was surrounded by police. It stated, " 'Mr. Crawford did not pose a threat to Officer Anderson's life or to any of the other officers surrounding the car.' " *Id.* The court reasoned:

> The second sentence quoted is not factual at all. It is simply an opinion—indeed, an opinion on the ultimate issue in this case. As such, it is a textbook example of conclu-

soriness. What is needed in an affidavit of this sort are facts, reasons, observations, and explanations—in a word, *evidence*—not sweeping conclusions. Instead [the plaintiff] has given us what amounts to merely a general denial. Such may suffice in the courts of Carroll's Wonderland, but our rules are more exacting.

*See id.* (emphasis in original) (citations omitted). Paragraph 8 of Dean's and Woolridge's affidavits presents a similar conclusion on an ultimate issue that is not well supported by facts in the affidavit, such as the positions of other bystanders, their own positions, or the speed and path of the vehicle. Therefore, this portion of the affidavits cannot be used to create an issue of material fact.

Fed.R.Civ.P. 56(e); Fed.R.Evid. 901(a).[7]

Moreover, even if the report were admissible, it would not create a genuine issue of material fact. The report's analysis of Officer Edinburg's use of deadly force concludes that he should have used the least amount of force possible under the circumstances if there were lesser alternatives available to secure the same result. *See* R.63, Ex.7 at 8. We have rejected that position and stated, "[w]e do not believe that the Fourth Amendment requires the use of the least or even a less deadly alternative so long as the use of deadly force is reasonable under *Tennessee v. Garner* and *Graham v. Connor* ...." *Plakas v. Drinski,* 19 F.3d 1143, 1149 (7th Cir.1994); *see also Pena v. Leombruni,* 200 F.3d 1031, 1033 (7th Cir. 1999) (commenting that, although the application of measures to render a person harmless without killing or wounding him may be desirable, in a case in which the individual presented a serious threat of bodily harm, failure to adopt lesser measures would be no more than negligence, which is not actionable under § 1983); *Forrett v. Richardson,* 112 F.3d 416, 420 (9th Cir.1997), *overruled on other grounds by Chroma Lighting v. GTE Prods. Corp.,* 127 F.3d 1136 (9th Cir.1997) (citing *Plakas* for the proposition that the Fourth Amendment does not require exhaustion of every alternative before using justifiable deadly force); 3 Wayne R. LaFave, *Search & Seizure* § 5.1, n. 161.2 (2003) (citing *Plakas* for the proposition that the "Fourth Amendment does not require police to exhaust every alternative before using deadly force").

■ Finally, Mr. Scott argues that the testimony of William Cranston, one of Officer Edinburg's instructors, precludes summary judgment. Cranston testified that shooting into a moving vehicle and the use of deadly force against a non-dangerous fleeing felon is a violation of police procedures. *See* R.65 at ¶¶ 4–6. However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices. *See Pasiewicz v. Lake County Forest Preserve Dist.,* 270 F.3d 520, 526 (7th Cir.2001); *Soller v. Moore,* 84 F.3d 964, 969 (7th Cir.1996) (rejecting evidence of police department policies as irrelevant in the Fourth Amendment reasonableness analysis); *Ford,* 855 F.2d at 1272–73 (upholding a district court's denial of a new trial after granting a directed verdict for defendant police officer even though plaintiffs introduced evidence of violations of police practices and police manual policies); *Freland,* 954 F.2d at 348 (adopting the approach of *Ford v. Childers,* limiting inquiry to whether the defendant violated *Garner,* not local police rules and practices).

The only issue before us is whether Officer Edinburg's use of force to effect an arrest was a reasonable seizure consistent with the Fourth Amendment. We emphasize that we are not called upon to deter-

---

**7.** *See Smith v. City of Chicago,* 242 F.3d 737, 741 (7th Cir.2001) ("In granting summary judgment, a 'court may consider any material that would be admissible or usable at trial,' including properly authenticated and admissible documents or exhibits." (citations and quotations omitted)); *Woods v. City of Chicago,* 234 F.3d 979, 988 (7th Cir.2000) (noting that court may consider "properly authenticated and admissible documents or exhibits" in evaluating a motion for summary judg-

ment); 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2722, at 379–80 & 382–84 (1998) ("Rule 56(e) requires that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit.... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.").

mine whether Officer Edinburg's conduct was either good police practice or a violation of Illinois law. *See Bell*, 321 F.3d at 641 ("To say that police officers have acted within the bounds that the Constitution sets is not necessarily to say that they have acted wisely."). Our inquiry is simply whether the record contains sufficient evidence on summary judgment to determine whether Officer Edinburg's conduct was reasonable under the Fourth Amendment. We conclude that it does.

## Conclusion

The judgment of the district court is affirmed.

AFFIRMED